UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00220-MOC-DSC

| | |
|---|---|
| **TROY DANIEL STAIRWALT,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) ORDER |
| | ) |
| **TIAA** *a/k/a and/or d/b/a* | ) |
| **TIAA BOARD OF OVERSEERS;** | ) |
| **TEACHERS INSURANCE AND ANNUITY** | ) |
| **ASSOCIATION OF AMERICA; AND TIAA-** | ) |
| **CREF INDIVIDUAL AND INSTITUTIONAL** | ) |
| **SERVICES, LLC**, | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the court on defendant's Motion for Summary Judgment (#22). Having considered defendant's motion and reviewed the pleadings, the court enters the following Order.

## FINDINGS AND CONCLUSIONS

### I. Background

In 2012, plaintiff began working at Teachers Insurance and Annuity Association of America ("TIAA") as a Senior Information Security Analyst. Two years later, he accepted a position within the Cyber Forensic Unit. On August 12, 2015, plaintiff was hospitalized and diagnosed with diverticulitis. He remained hospitalized for ten days and returned to work on August 31, 2015. While he was out of work, the makeup of his team changed, and his new director was Shawn Swartout.

On September 29, 2015, plaintiff underwent scheduled colon surgery. A few days before his surgery, on September 25, 2015, plaintiff met with Mr. Swartout. Plaintiff complains that, during that meeting, Mr. Swartout told plaintiff that "he had been hitting the ball out of the park and he wasn't really sure what to do with [him]" because he was such a high performer. While plaintiff admits that Mr. Swartout did not say anything offensive during this meeting, plaintiff claims to have been bothered by Mr. Swartout praising him as a high performer, merely because plaintiff was getting ready to go out for surgery.

While out on approved Family Medical Leave Act ("FMLA") leave, Mr. Swartout called plaintiff, told him that a manager had left the team, and offered plaintiff the position of interim manager of the unit. He offered plaintiff this position although he knew plaintiff would be on leave for about another month. Plaintiff assumed the interim manager position on November 11, 2015, upon his return to work, and reported directly to Mr. Swartout, his director, at that time. On December 8, 2015, plaintiff collapsed at work and took paid time off for several days, returning to work on December 12, 2015, without any restrictions relating to his job.

On February 3, 2016, Mr. Swartout emailed plaintiff asking if he had "any idea what [his] schedule will be over the next few weeks or months." Plaintiff then berated his manager by email, forwarding it to the entire team. Again, on February 8, 2016, plaintiff emailed Mr. Swartout and the entire team, berating Mr. Swartout relating to questions about plaintiff's work schedule. Plaintiff was not disciplined for this conduct.

On February 24, 2016, plaintiff emailed Mr. Swartout, telling him that plaintiff "sincerely appreciate[d]" Mr. Swarout's "support during [his] recovery" and asked Mr. Swartout to "share

these sentiments with Stephen and Rick," who were the chief information security officer and human resources representative, respectively.

In January or February 2016 plaintiff received a performance evaluation which resulted in him receiving a $6,000 pay increase and a $24,000 bonus. Plaintiff continued to work, taking intermittent leave as needed, until about March 3, 2016, when plaintiff went out on continuous FMLA leave and again received short-term disability. Plaintiff's continuous leave continued through June 1, 2016, when his doctors released him to return to work. During this time, he was never disciplined for any absences and never lost pay.

Upon plaintiff's return to work in June 2016, he worked part-time for three weeks before returning to full-time work, as recommended by one of his physicians. At that time, he reported to a new manager, Jeffrey Kirkpatrick. In mid-August 2016, plaintiff received an employment offer from Ohio Farmers Insurance and gave TIAA his two-week notice. He started work at Ohio Farmers Insurance in early September 2016, earning the same salary as he earned at TIAA with no lapse in employment.

Plaintiff filed a Complaint (#1) on April 24, 2017, and an Amended Complaint (#2) on July 24, 2017. Defendants' Answers (#8, 9) were filed on September 14, 2017. Defendants filed a Motion for Summary Judgment (#22) along with a Brief in Support of Motion for Summary Judgment (#23) on June 25, 2018. Plaintiff filed a Response in Opposition to Defendants' Motion for Summary Judgment (#24) on July 9, 2018. Defendants filed a Reply Brief in Support of Defendants' Motion for Summary Judgement (#25) on July 16, 2018.

## II. Applicable Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it may affect the suit's outcome under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). The burden then shifts to the nonmoving party. That party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in pleadings to defeat a motion for summary judgment. Id. at 324. Instead, that party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

The Court views evidence and any inferences from evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The question posed by summary judgment is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252.

**III. Discussion**

Plaintiff alleges five claims: (1) interference with or discrimination under the Family and Medical Leave Act ("FMLA"), (2) failure to accommodate and retaliation in violation of the Americans with Disabilities Act ("ADA"), (3) intentional infliction of emotional distress ("IIED"), (4) negligent infliction of emotional distress ("NIED"), and (5) punitive damages. The court will consider each of these claims below.

**A. Interference with or discrimination under the FMLA**

First, the court considers plaintiff's interference claim under the FMLA. Plaintiff argues that there was constant pressure due to the increased workload, which was not favorable to his health condition. Additionally, plaintiff argues that he had to use his vacation and personal days while he was sick, which was against company policy.

To make out an interference claim under the FMLA, the plaintiff bears the burden of proof in establishing that "(1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 427 (4th Cir. 2015). Such a claim offers no relief "unless the employee has been prejudiced by the violation." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002). Plaintiff was entitled to an FMLA benefit, which he received, but plaintiff fails to meet his burden on the second and third prongs.

**i. TIAA did not interfere with plaintiff's FMLA rights**

"[F]or an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld." Ross v. Gilhuly, 755 F.3d 185, 192 (3d Cir. 2014). Here, all of plaintiff's FMLA leave requests were approved by TIAA. Plaintiff's admission that none of his FMLA leave

requests were denied is sufficient alone to defeat his claim for interference of his FMLA rights. Plaintiff was allowed intermittent and continuous leave, as instructed by his doctors, from August 2015 until his voluntary resignation in August 2016. During this time, TIAA approved every absence that plaintiff had under the FMLA relating to his serious health condition and medical appointments.

Additionally, plaintiff complains of the constant pressure of the workload imposed on him despite his health condition. Plaintiff, however, was never disciplined for failing to complete his work, and he suffered no pay loss. TIAA even offered plaintiff the position of interim manager and provided him with a merit increase and bonus, totaling $30,000. Such conduct belies any claim that plaintiff's director or TIAA somehow interfered with his right to exercise his FMLA rights.

Furthermore, the FMLA provides that when medical leave is foreseeable, the employee "shall make a reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer." 29 U.S.C. § 2612(e)(2); see also 29 C.F.R. §§ 825.203 ("If an employee needs leave intermittently or on a reduced leave schedule for planned medical treatment, then the employee must make a reasonable effort to schedule the treatment so as not to disrupt unduly the employer's operations."); 825.302(e) ("When planning medical treatment, the employee must consult with the employer and make a reasonable effort to schedule the treatment so as not to disrupt unduly the employer's operations."). This is one of the "important requirements" of the FMLA. Rodriguez v. Smithfield Packing Co., 545 F. Supp. 2d 508, 515 (D. Md. 2008); see also Womack v. Brown-Forman Corp., 897 F. Supp. 2d 646, 660 (E.D. Tenn. 2012) (explaining that FMLA rights are not "unfettered" and that the plaintiff was required to "consult with her supervisors to schedule appointments at times that did not unduly disrupt her work schedule").

Here, TIAA approved plaintiff's absences for medical appointments, even when plaintiff did not consult with TIAA before scheduling his appointments, which is more generous than what is required. See 29 U.S.C. § 2612(e)(2); see also 29 C.F.R. §§ 825.203, 825.302(e). While TIAA asked that plaintiff let them know about his expected schedule, TIAA never required plaintiff to reschedule any appointments. See Womack, 897 F. Supp. 2d at 660. Such a request, however, would have been entirely appropriate and permissible under the FMLA.

Thus, any request by TIAA for plaintiff to identify his work schedule or to schedule his follow up medical appointments at a time that was least disruptive to TIAA was entirely appropriate under the FMLA and did not interfere with plaintiff's FMLA rights as a matter of law. Therefore, plaintiff fails on the second prong of an interference claim under the FMLA.

**ii. Plaintiff did not suffer any harm as a result of any alleged interference with his FMLA rights**

Furthermore, even assuming that defendant did interfere with plaintiff's rights under the FMLA, plaintiff cannot show harm as a result of any alleged interference with his FMLA rights. TIAA approved every absence plaintiff requested, and plaintiff did not lose any compensation or benefits during his recovery or incur any other type of financial harm as a result of his absences. He was compensated for all the days he took off from work through paid time off, salary, or short-term disability payments. Further, plaintiff never received any disciplinary action from TIAA for the days he missed.

Plaintiff complains that defendant forced him to use vacation days before his short-term disability began paying him. However, under the FMLA "[a]n employee may be required to exhaust accrued sick, personal, and vacation time as part of the twelve-week leave." Cleary v.

Nationwide Mut. Ins. Co., 9 F. App'x 1, 4 n.4 (4th Cir. 2001) (per curiam) (citing 29 U.S.C. § 2612(d)(2)(A)). Thus, it was reasonable for defendant to require plaintiff to use vacation days while taking time off from work due to health issues.

Further, plaintiff complains his director questioned or sought additional information about some of his leave requests. However, employers are permitted "to verify the claimed medical condition, to assess how long the employee might be out of work, and to fashion the best environment for the employee upon return to the workplace." Adams, 789 F.3d at 427. As such, plaintiff cannot show he suffered any harm as a result of defendant's conduct. Plaintiff's FMLA interference claim thus fails as a matter of law, and summary judgment is appropriate.

**B. Failure to accommodate and retaliation in violation of the ADA**

Next, the court will consider plaintiff's failure to accommodate and retaliation claims under the ADA. Plaintiff argues that he requested an accommodation which was not granted. Specifically, plaintiff contends he lost his vacation days when he took days off work due to his health problems, which was against company policy, and that his director had too much control in the decisions of when plaintiff's doctors' appointments would be.

To establish a claim for disability discrimination, plaintiff must establish a prima facie case of discrimination by showing: (1) he is within the ADA's protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse employment action, he was performing his job at a level that met his employer's legitimate expectations; and (4) the adverse employment action occurred under circumstances giving rise to a reasonable inference of unlawful discrimination. See Williams v. Brunswick Cty. Bd. of Educ., 725 F. Supp. 2d 538, 543 (E.D.N.C.

2010), aff'd, 440 F. App'x 169 (4th Cir. 2011) (per curiam) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

Here, plaintiff never explains what "adverse employment action" he allegedly suffered. To the contrary, the record evidence shows that he did not suffer such an action. He was provided with leave (continuous and intermittent) on multiple occasions, and later voluntarily quit. Plaintiff did not even receive disciplinary actions when he berated his director in group emails to the team. Instead, he received a significant merit pay increase and bonus totaling $30,000, well after TIAA was aware of plaintiff's medical issues and leave requests. None of these actions constitute an "adverse employment action" sufficient to justify a claim under the ADA. Williams, 725 F. Supp. 2d at 543. Further, plaintiff has not identified a single instance in which he requested time off for a medical appointment and was denied; instead, the record shows that he was allowed time off every time he requested it. During his leave, he was even offered the role of interim manager, which he accepted. Again, none of these actions constitute an "adverse employment action." Id. Because plaintiff cannot establish an essential element of his claim under the ADA, his claim fails as a matter of law. See id. (establishing plaintiff must have all four elements to prevail on an ADA claim).

Indeed, the cases cited by plaintiff support this conclusion. For example, plaintiff cites a case in which the Fifth Circuit affirmed summary judgment for an employer and held that the mere fact that an employee had bipolar disorder was not enough to maintain a claim under the ADA. Taylor v. Principal Fin. Grp., Inc., 93 F.3d 155, 165 (5th Cir. 1996) (holding summary judgment was appropriate because plaintiff failed to show that the employer refused to provide a reasonable accommodation). Similarly, plaintiff cites to a case in which the Fifth Circuit affirmed judgment

as a matter of law for an employer who reasonably accommodated an injured worker. Loulseged v. Akzo Nobel Inc., 178 F.3d 731 (5th Cir. 1999) (noting that "the interactive process requires the input of the employee as well as the employer," and thus, "an employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer").

Here, the process "broke down," as in Loulseged, because plaintiff never indicated he had restrictions on his ability to work on the days he was at work. Id. Additionally, as in Taylor, neither plaintiff nor his physicians ever indicated he required a restricted work schedule, and as such, plaintiff "remain[ed] silent" and did nothing to indicate that further accommodation was required. See Taylor, 93 F.3d at 165.

Further, while plaintiff complains that work reassignments would have helped him, assigning plaintiff's work to another employee is not a reasonable accommodation. The ADA "is not an affirmative action statute in the sense of requiring an employer to give preferential treatment to a disabled employee merely on account of the employee's disability." Stopka v. Med. Univ. of S.C., No. 2:05-1728-CWH, 2007 WL 2022188, at *12 (D.S.C. July 11, 2007); see also U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 400 (2002); Fiorillo v. United Techs. Corp., 2016 WL 1118789, at *15 (D. Conn. Mar. 21, 2016) (holding summary judgment was appropriate and noting that "restructuring an existing job may be a reasonable accommodation, [but] an employer is not obligated to hire additional employees or have multiple employees perform the work normally performed by a single employee in order to satisfy its obligations under the ADA"). Courts have routinely rejected similar requests for reduced workloads because "an accommodation that would

require other employees to work harder is unreasonable." Lewis v. Gibson, 621 F. App'x 163, 165 (4th Cir. 2015) (per curiam) (citing cases).

Here, plaintiff has not shown that he requested a specific accommodation, that he was denied an accommodation, or that any accommodation he now seeks would have been reasonable. Plaintiff has not put forth any evidence, or any evidence from which a reasonable inference could be drawn by reasonable jurors, that would support a finding in his favor under the ADA. As such, summary judgment on plaintiff's ADA claims is appropriate.

### C. Intentional infliction of emotional distress

Next, the court considers plaintiff's IIED claim. The essential elements of such a claim are "(1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress." Waddle v. Sparks, 331 N.C. 73, 82 (1992). "A claim for [IIED] exists when a defendant's conduct exceeds all bounds usually tolerated by decent society." Watson v. Dixon, 130 N.C. App. 47, 52–53 (1998), aff'd on reh'g, 132 N.C. App. 329 (1999), aff'd, 352 N.C. 343 (2000). Conduct is extreme and outrageous when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Briggs v. Rosenthal, 73 N.C. App. 672, 677 (1985). "The behavior must be more than mere insults, indignities, threats, and plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Smith-Price v. Charter Behavioral Health Sys., 164 N.C. App. 349, 354 (2004). "The determination of whether the conduct alleged was intentional and was extreme and outrageous enough to support such an

action is a question of law for the trial judge." Lenins v. K-Mart Corp., 98 N.C. App. 590, 599 (1990).

In support of his IIED claim, plaintiff contends that Dr. Betty Wright Russell determined that he suffered trauma, which resulted from his experiences at work, and which were "still very fresh in his mind." Additionally, Dr. Russell found plaintiff to be hyper-emotional, irritable, and angry. She opined that

> His [plaintiff's] recovery from the medical condition was compromised by the psychological trauma experienced in the workplace. His case is indicative of the mind body connection demonstrating how psychological stress compromise healing.

Plaintiff's Exh. B (Russell Letter). Plaintiff contends this trauma is sufficient to justify an IIED claim.

While Dr. Russell's opinions are relevant to the third element of an IIED claim (the harm element), her conclusions are not relevant to whether defendants' alleged conduct was "extreme and outrageous" under the first element or intentional under the second. Waddle, 331 N.C. at 82; Dunkin v. Marshall Air Sys., Inc., 2014 WL 4407043, at *3 (W.D.N.C. Sept. 8, 2014). Plaintiff merely presents evidence of workplace disagreements, discussions, and directions with and from his supervisor – things that occur in every job and in every workplace. Even interpreted in a light most favorable to plaintiff, nothing in the record reflects that defendants engaged in intentional, extreme and outrageous behavior that would support a claim for IIED.

What is unusual here is the quantum of evidence showing that plaintiff was *not* mistreated by defendants, but was treated incredibly well. The vidence now before the Court shows that: plaintiff's director complimented plaintiff for being a high performer; plaintiff was offered him the interim manager position while he was on leave; defendants approved plaintiff's requests for

intermittent and continuous leave; defendants gave plaintiff a favorable performance evaluation rating; and plaintiff received a bonus and merit increase totaling $30,000. None of these actions rise to the level of "extreme and outrageous" conduct, or could be found to be "utterly intolerable in a civilized community," Briggs, 73 N.C. App. at 677, or "exceed[ing] all bounds usually tolerated by decent society," Watson, 130 N.C. App. at 52–53, aff'd on reh'g, 132 N.C. App. 329 (1999), aff'd, 352 N.C. 343 (2000). As such, plaintiff's claim for IIED fails as a matter of law, and summary judgment is thus appropriate.

### D. Negligent infliction of emotional distress

Next, the court considers plaintiff's claim for negligent infliction of emotional distress ("NIED"). To maintain a cause of action for NIED, plaintiff must show "that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." McAllister v. Ha, 347 N.C. 638, 645 (1998). Without evidence of negligence, a plaintiff cannot maintain a claim for NIED. See, e.g., Reese v. Meritor Auto., Inc., 5 F. App'x 239, 245 (4th Cir. 2001) (per curiam); Starnes v. Gen. Elec. Co., 201 F. Supp. 2d 549, 564-65 (M.D.N.C. 2002); Royal v. Armstrong, 136 N.C. App. 465, 473 (2000). When a plaintiff only points to purported intentional acts, as opposed to providing evidence of any acts of negligence, summary judgment is appropriate. See, e.g., Townsend v. Shook, 323 F. App'x 245, 252 (4th Cir. 2009) (per curiam); cf. Magidson v. Wachovia Bank, NA, No. 1:07CV505, 2007 WL 4592230, at *5 (M.D.N.C. Dec. 27, 2007) (explaining that "when the plaintiff's complaint alleges acts that are intentional in nature, and simply concludes that the acts were committed negligently, it is insufficient to state a claim for negligent infliction of emotional distress"); see also Fox-Kirk v.

Hannon, 142 N.C. App. 267, 273 (2001) (explaining that such a claim requires proof of a negligent act by the defendant).

Plaintiff argues that TIAA was negligent in "not providing information" to plaintiff's director about legal requirements under the ADA and FMLA, and that plaintiff's director was negligent in "not speaking with the Human Resources" about the statutes. As an initial matter, plaintiff's claim for NIED fails because he asserts that TIAA engaged in intentional, rather than negligent, conduct. See Magidson, 2007 WL 4592230, at *5 (explaining that "when the plaintiff's complaint alleges acts that are intentional in nature, and simply concludes that the acts were committed negligently, it is insufficient to state a claim for negligent infliction of emotional distress"). Further, plaintiff does not show that TIAA breached any legal duty owed to him.

Plaintiff neither cited any evidence in the record that would support such assertations, nor does plaintiff cite any legal authority to show that defendants had a duty to mandate that plaintiff's supervisor consult with its HR department about the FMLA or ADA. As outlined above, plaintiff's director authorized all leave that plaintiff requested.

This court has searched for decisions that would support plaintiff's argument concerning the element of duty and cannot find any legal authority that would plaintiff's argument. With no duty, there can be no negligence, making plaintiff's claim for NIED fail as a matter of law. See, e.g., Reese, 5 F. App'x at 245; Starnes, 201 F. Supp. 2d at 564-65; Royal, 136 N.C. App. At 473.

### E. Punitive Damages

Defendant have also moved for summary judgment on plaintiff's "claim" for punitive damages. While plaintiff does indeed assert a "claim" for punitive damages, punitive damages are not a freestanding claim but a remedy for some other viable tort claim. As a matter of state law,

"punitive damages" is not a cause of action, but is instead a remedy available in very limited circumstances.

> As a general rule, "[p]unitive damages do not and cannot exist as an independent cause of action, but are mere incidents of the cause of action and can never constitute a basis for it. If the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all." J. Stein, Damages and Recovery § 195 at 389 (1972). North Carolina follows this general rule of law.

Hawkins v. Hawkins, 101 N.C.App. 529, 532 (1991). In North Carolina,

> punitive damages may be awarded only if a claimant proves that the defendant is liable for compensatory damages and that the defendant is guilty of fraud, malice, or willful or wonton conduct.

Combs & Associates, Inc. v. Kennedy, 147 N.C.App. 362, 374 (2001) (citation omitted). Further, it appears that

> Punitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, and managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages.

Phillips v. Restaurant Management of Carolina, L.P., 146 N.C.App. 203, 215-16 (2001) (citation omitted). In North Carolina, the aggravating factors that will justify imposition of punitive damages are set forth by statute: "(1) fraud, (2) malice, or (3) willful or wanton conduct." N.C. Gen.Stat. § 1D-15(a). Here, any claim that would contain any such elements is no longer viable; thus, to the extent plaintiff has attempted to assert a "claim" for punitive damages, that claim is also no longer viable. The Court does agree that plaintiff, in not responding to the motion in regards to punitive damages, has abandoned that avenue of relief. See Chamberlain v. Securian Fin. Grp. Inc., 180 F. Supp. 3d 381, 405 (W.D.N.C. 2016) (explaining that when a plaintiff fails to respond to arguments regarding a claim, the claim can be dismissed due to abandonment).

## IV. Conclusion

Having considered the evidence of record and the arguments presented by the parties, summary judgment will be granted to defendants on plaintiff's claims for (1) interference with or discrimination under the FMLA, (2) failure to accommodate and retaliation in violation of the ADA, (3) IIED, (4) NIED, and (5) punitive damages.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendants' Motion for Summary Judgment (#22) is **GRANTED** and this matter is **DISMISSED** with prejudice.

Signed: August 6, 2018

Max O. Cogburn Jr
United States District Judge